

DAVID A. WIMMER (State Bar No. 155792)
   E-Mail: dwimmer@swerdlowlaw.com
EMILY G. CAMASTRA (State Bar No. 258808)
   E-Mail: ecamastra@swerdlowlaw.com
**SWERDLOW FLORENCE**
   **SANCHEZ SWERDLOW & WIMMER**
A Law Corporation
9401 Wilshire Blvd., Suite 828
Beverly Hills, California 90212
Telephone: (310) 288-3980

Attorneys for Defendant National Filter Service, Inc.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KENDALL MAYSHACK, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> NATIONAL FILTER SERVICE, INC., a Virginia Corporation; and DOES 1 through 100, inclusive, <br><br> Defendant. | Case No.    2:16-cv-7863 <br><br> [Los Angeles Superior Court Casc No. BC624627] <br><br> **NOTICE OF REMOVAL** <br> **(28 U.S.C. §§ 1332, 1441)** |

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant National Filter Service, Inc. ("NFS" or "Defendant"), by and through its counsel, files this Notice of Removal pursuant to 28 U.S.C. Sections 1441 and 1446, asserting original diversity jurisdiction pursuant to 28 U.S.C. Section 1332, to effect the removal of the above-captioned action, which was commenced in the Superior Court of the State of California for the County of Los Angeles, and states that the removal is proper for the following reasons:

404051.2 / 4554-003

## PLEADINGS AND PROCEEDINGS

1.     On June 21, 2016, Plaintiff, Kendall Mayshack ("Plaintiff"), commenced this civil action against NFS by filing a Complaint (the "Complaint") in the Los Angeles County Superior Court, captioned *Mayshack v. National Filter Service, Inc.*, Case No. BC624627 (the "State Court Action"), a true and correct copy of which is attached hereto as Exhibit A (along with its Summons).

2.     On September 22, 2016, NFS was served with the Complaint and Summons.  See Declaration of Cheryl Cook ("Cook Decl.") at ¶¶ 2-3, 11.

3.     NFS filed its Answer to the Complaint on October 19, 2016.  A true and correct copy is attached hereto as Exhibit B.

4.     NFS is informed and believes that no other pleadings or papers have been filed in this action, and no other defendant has been served with the Complaint.

## TIMELINESS OF REMOVAL

5.     This Notice of Removal has been filed within 30 days of NFS' receipt of the Summons and Complaint on September 22, 2016.  28 U.S.C. § 1446(b); see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 356 (1999) (noting the 30-day removal period runs from the service of the summons and complaint).

## REMOVAL JURISDICTION – DIVERSITY

6.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C. Section 1332, and NFS may remove it from state to federal court pursuant to 28 U.S.C. Section 1441(b), in that this action involves citizens of different states and the amount in controversy, as alleged, exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

7.     As required by 28 U.S.C. Section 1441, NFS removes this action to the United States District Court for the Central District of California, which is the District Court embracing the place where the State Court Action has been filed.

2

NOTICE OF REMOVAL

8.     In accordance with 28 U.S.C. Section 1446(d), NFS has given contemporaneous written notice of this Notice of Removal to all adverse parties and to the Clerk of the State Court.

## CITIZENSHIP OF PARTIES

9.     **Plaintiff Is A California Citizen.**  Plaintiff is, and at all times relevant to this Complaint has been, a California citizen.  By his own admission, he is a resident of the city and county of Los Angeles in the State of California.  See Exhibit A (Complaint) at ¶ 1.  Additionally, at all times during Plaintiff's employment with NFS, Plaintiff's employment with NFS was based in California.  See Cook Decl. at ¶¶ 6-7.  Plaintiff's Complaint admits that, during his period of employment with NFS, *"Plaintiff lived and worked in California."*  Exhibit A (Complaint) at ¶ 10 (emphasis added).  Furthermore, during his employment with NFS, Plaintiff paid California state income tax and had a California drivers' license.  See Cook Decl. at ¶¶ 6-8.  NFS further is informed and believes and, based thereon, avers that Plaintiff has the intent to remain in California and is a citizen of California.  See Mondragon v. Capital One Auto Finance, 736 F. 3d 880, 885 (9th Cir. 2013) (holding that, in connection with removal to federal court, a person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change"); see also Lew v. Moss, 797 F. 2d 747, 751-52 (9th Cir. 1986) (holding that California was state of domicile for party with a California residential address and California drivers' license).

10.     **NFS Is A Virginia Citizen**.  At the time this action was filed and at the time this Notice of Removal was filed, NFS was and is a corporation incorporated in the Commonwealth of Virginia with its principal place of business in Fork Union, Virginia.  See Cook Decl. at ¶¶ 2-5.  The business activities of NFS, including the creation of personnel policies, financial information systems, information technology systems and business decisions affecting the entire company are directed, controlled, and coordinated through the personnel who work at NFS'

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

corporate headquarters in Fork Union, Virginia. Id. at ¶¶ 3, 5. The President/CEO and all managerial employees of NFS work out of NFS' corporate headquarters in Fork Union, Virginia. See id. Plaintiff's direct supervisor also was located in Fork Union, Virginia. See id. The Complaint itself acknowledges that NFS is incorporated in Virginia and has its corporate headquarters located in Fork Union, Virginia. See Exhibit A (Complaint) at ¶ 2. Thus, at all relevant times, NFS was not and is not a citizen of the State of California but, rather, was and is a citizen of the Commonwealth of Virginia for the purpose of determining jurisdiction. See Hertz Corp. v. Friend, 559 U.S. 77, 91-92 (2010) (for the purposes of removal, the "nerve center" test applies, whereby a corporation is deemed to be a citizen of the State where the corporation's officers direct, control and coordinate the corporation's activities); Tosco Corp. v. Communities for a Better Env't, 236 F. 3d 495, 499 (9th Cir. 2001). NFS is, therefore, for the purposes of removal, and pursuant to 28 U.S.C. § 1332(c), a citizen of the Commonwealth of Virginia.

11. The Complaint also names "DOES 1 through 100" as defendants. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). Therefore, for purposes of removal with jurisdiction based on 28 U.S.C. Section 1332, the citizenship of all of the defendants "Doe" is to be disregarded.

## AMOUNT IN CONTROVERSY

12. NFS denies any liability as to Plaintiff's claims. However, based on the allegations, claims, and Prayer for Relief set forth in the Complaint, the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.00. The amount in controversy calculations, as set forth below, are based on an assumption *for purposes of removal only* that the allegations of Plaintiff's Complaint regarding his theories of liability are true but *without any type of express or implied admission that any such liability in fact exists*. See e.g., Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005) ("[R]emovability under

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

§ 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry").

13.     Here, Plaintiff's Complaint does not specify a particular amount of damages. To the extent anything beyond a plausible allegation standard may be found to apply, then at most, where a complaint is silent on the amount in controversy, the defendant need only prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00. See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996); see also Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007) (applying the Sanchez preponderance of the evidence burden in defendant's removal where plaintiff failed to sufficiently specify a total amount in controversy).

14.     To satisfy the preponderance of the evidence test, a defendant must simply provide evidence that *"it is more likely than not"* that the amount in controversy is satisfied. Sanchez, 102 F.3d at 404. The removing defendant's burden of establishing that the amount in controversy exceeds $75,000.00 is not daunting and does not require the defendant to do extensive research or prove the plaintiff's damages. See Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, *5 (C.D. Cal. May 9, 2011); see also Valdez v Allstate Ins. Co., 372 F. 3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy"). The amount in controversy may include general and special compensatory damages and attorneys' fees that are recoverable by statute. Galt G/S v. JSS Scandinavia, 142 F. 3d 1150, 1155-56 (9th Cir. 1998); Goldberg v. CPC Int'l, Inc., 678 F. 2d 1365, 1367 (9th Cir. 1982) (attorneys' fees may be taken into account to determine jurisdictional amount). The amount in controversy may also include punitive and emotional-distress damages. Gibson v. Chrysler Corp., 261 F. 3d 927, 945 (9th Cir. 2001); Kroske v. U.S. Bank Corp., 432 F. 3d 976, 980 (9th Cir. 2005).

15. Plaintiff alleges claims against NFS for numerous California Labor Code violations, including failure to pay overtime, failure to pay meal periods, failure to pay rest periods, failure to reimburse for employee-related expenses, failure to provide accurate itemized wage statements, failure to pay minimum wage, and failure to pay all wages due at separation of employment. See Exhibit A (Complaint) at ¶¶ 33-74. Plaintiff also alleges that NFS wrongfully terminated his employment in retaliation for complaining about NFS' payroll practices. Id. at ¶¶ 75-84. Plaintiff seeks compensatory, special, and general damages that include lost earnings and employment benefits and damages for injury to his person. See id. at ¶¶ 80-81 & Prayer for Relief. Plaintiff also seeks to recover waiting-time penalties and other civil penalties for violations of the California Labor Code. See id. at Prayer for Relief. Lastly, Plaintiff seeks unspecified amounts of punitive damages and reasonable attorneys' fees. See id.

16. **Wrongful Discharge Claim.** The Complaint seeks general, special and compensatory damages in the form of lost wages and benefits, and damages for personal injury in connection with Plaintiff's claim for wrongful discharge in violation of Labor Code Section 1102.5. Plaintiff commenced his employment with NFS on May 11, 2014, and was terminated on July 2, 2015. See Cook Decl. at ¶ 9; see also Exhibit A (Complaint) at ¶ 10. In 2015, Plaintiff's W-2 wages were $15,636.18. See Cook Decl. at ¶ 10. Accordingly, Plaintiff's average weekly wages in 2015 (from January through the end of June) was $601.39 ($15,636.18 ÷ 26 weeks).

17. For purposes of determining the value of Plaintiff's claim for lost wages only (i.e. without considering the potential value of other lost employment benefits, and exclusive of interest), NFS reasonably estimates that this matter will conclude by October 2017, or within a conservative estimate of 12 months from its

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

removal from the State Court.[1] Thus, Plaintiff's claim for lost wages due to wrongful discharge would span approximately 120 weeks – from July 2, 2015 (termination date), through October 21, 2017 (removal date).

18.     Based on Plaintiff's average weekly compensation with NFS, Plaintiff's lost wages over this 120-week period amounts to **$72,166.80** ($601.39 x 120 weeks).[2]

19.     **Claim for Unpaid Overtime.**  In his first cause of action, Plaintiff alleges that NFS failed and refused to pay and properly calculate overtime compensation as required by law.  See Exhibit A (Complaint) at ¶ 37.  The statute of limitations for overtime claims pursuant to California Labor Code Section 1194 is three years.  See Cal. Code Civ. Proc. § 338(a).  Thus, because Plaintiff filed his Complaint on June 21, 2016, Plaintiff seeks unpaid overtime from his date of hire (May 11, 2014) through his termination of employment (July 2, 2015).

20.     Plaintiff alleges that his hourly rate of pay varied between $11.00 and $11.40 during the entirety of his employment with NFS.  See Exhibit A (Complaint) at ¶ 14.  With an hourly rate of pay of $11.00, Plaintiff's overtime rate would be $16.50, and his double time rate would be $22.00.

21.     Plaintiff alleges that, throughout his employment with NFS, he had an alternating schedule where he worked 21 consecutive days and then took 7 consecutive days off.  See Exhibit A (Complaint) at ¶¶ 17, 11.  Thus, because Plaintiff essentially claims to have worked three-quarters of all the weeks in the

[1] See Table C-5 of the U.S. Courts Caseload Statistics 2015, available at URL http://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2015/12/31 (observing median time interval from filing to trial of civil cases in the Central District of California to be 20.9 months).

[2] Even if the Court only considered Plaintiff's lost wages from the date of termination until the filing of this Removal (i.e., from July 2, 2015, to October 21, 2016), Plaintiff's lost wages for that 68-week period would be $40,894.52 ($601.39 x 68 weeks), which still would aggregate with other damages sought in the Complaint to exceed $75,000.00.  See infra.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

limitations period, and there were 60 weeks in the limitations period (from May 11, 2014, to July 2, 2015), Plaintiff allegedly worked 45 workweeks (60 x ¾).

22.     Plaintiff alleges that he worked more than 12 hours per day and more than 80 hours per week. Id. at ¶ 17. He alleges that NFS did not pay him premium wages for work performed: (a) over eight hours in a day; (b) over 40 hours in a week; or (c) for the first eight hours worked on the seventh consecutive day. Id. Plaintiff further alleges that NFS did not pay him double time for work performed over 12 hours in a single day or after eight hours worked on the seventh consecutive day. Id. Assuming (without conceding) the truth of these allegations, Plaintiff could allege that Defendant failed to pay him 32 hours of overtime and 16 hours of double time every week. This calculation is based on Plaintiff's allegation that he worked: (a) four daily hours of overtime on the first six days of the week; (b) eight hours of overtime on the seventh day of the week; (c) four hours of double time on the sixth day of the week; and (d) 12 hours of overtime on the seventh day of the week.

23.     Accordingly, Plaintiff could claim he is entitled to at least $23,760.00 in overtime ($16.50 x 32 hours per week x 45 weeks) and $15,840.00 in double time ($22.00 x 16 hours per week x 20 weeks). Therefore, the total amount in controversy on Plaintiff's unpaid overtime claim is **$39,600.00** ($23,760.00 + $15,840.00).[3]

24.     **Meal and Rest Period Claims**. In his third and fourth causes of action, Plaintiff seeks relief for NFS' alleged failure to provide meal and rest periods, respectively. See Exhibit A (Complaint) at ¶¶ 44-51. In support of his claim, Plaintiff alleges that he was not permitted to take a 10-minute rest break in the morning, afternoon, or evening. Id. at ¶ 21. The Complaint further alleges that

---

[3] This is a conservative estimate because it calculates Plaintiff's alleged overtime and double time based on an hourly rate of pay of $11.00, which increased over the course of Plaintiff's employment with NFS.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

Plaintiff was not "permitted to take an uninterrupted 30 minute meal period break for every 5 hours worked, or a second uninterrupted 30 minute meal period break for every 10 hours worked." Id. Plaintiff seeks relief pursuant to California Labor Code Section 226.7(c), which requires employers to pay an extra hour's pay to employees who are not provided a meal period, and an extra hour's pay to employees who are not provided a rest period. The statute of limitations for recovery under California Labor Code Section 226.7 is three years. See Murphy v. Kenneth Cole, Inc., 40 Cal. 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.")

25. Based on the allegations in Plaintiff's Complaint that NFS allegedly deprived him of _all_ the legally required off-duty meal periods and of _all_ allowed rest periods, the amount in controversy on Plaintiff's meal and rest-period claims is calculated by assuming Plaintiff is entitled to two additional hours of pay (one for an unpaid meal period and one for an unpaid rest period) for every day that Plaintiff worked. As explained above, Plaintiff alleges that he alternated between working 21 consecutive days and then taking 7 consecutive days off. See Exhibit A (Complaint) at ¶¶ 17, 11. From May 11, 2014, to July 2, 2015, this amounts to 312 workdays for which Plaintiff alleges unpaid meal and rest periods. The unpaid meal-period premiums would thus amount to $3,432.00 ($11.00 x 312). The unpaid rest-period premium would also amount to $3,432.00 ($11.00 x 312). Thus, the total amount in controversy on Plaintiff's meal and rest-period claims is **$6,864.00** ($3,432.00 x 2).

26. **Claim for Untimely Final Wages**. Plaintiff's fifth cause of action alleges that NFS failed to pay Plaintiff all earned wages at the time of his termination because NFS tendered his final payment one month after his termination, illegally withheld $700.00 from his final wages, and failed to pay for overtime and missed meal and rest periods. See Exhibit A (Complaint) at ¶¶ 53-54.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

California Labor Code Section 203 provides: "If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days."

27.    Because Plaintiff's claim for untimely final wages is based, in part, on his allegations that NFS illegally withheld $700.00 and failed to pay overtime and meal and rest-period premiums, the amount in controversy on Plaintiff's untimely wage claim is the 30-day statutory maximum.  See Cal. Lab. Code § 203. Accordingly, assuming (without conceding) that Plaintiff worked 12 hours per day at the conservative rate of $11.00 per hour, his daily wages would have been $154.00 ((8 hours x $11.00) + (4 hours x $16.50)).  Thus, the amount in controversy on Plaintiff's untimely final-wages claim is **$4,620.00** (30 days x $154.00).

28.    **Claim Pursuant to California Labor Code Section 1102.5(f).**  In his ninth cause of action, Plaintiff alleges that NFS violated Labor Code Section 1102.5(b) by terminating his employment in retaliation for allegedly complaining about NFS' payroll practices.  See Exhibit A (Complaint) at ¶ 79.  Section 1102.5(f) provides for a civil penalty not to exceed $10,000 to be imposed on an employer. Plaintiff's Complaint requests a civil penalty against NFS in the amount of **$10,000.00**.  See Exhibit A (Complaint) at ¶ 83.

29.    **Emotional Distress Damages.**  Plaintiff alleges that he has suffered "severe and serious injury to his person" as a result of NFS' alleged wrongful termination of his employment.  See Complaint (Exhibit A) at ¶ 81.  Such an allegation may support his seeking damages for emotional distress relating to his termination, which is not uncommon in such lawsuits.  "In order to establish the amount of emotional distress and punitive damages in controversy, a defendant may introduce evidence of jury verdicts in cases involving analogous facts." Rivera v. Costco Wholesale Corp., 2008 WL 2740399, *4 (N.D. Cal. July 11, 2008).

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

California courts have recognized that emotional distress damages in successful employment cases "may be *substantial*." Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) (emphasis added); Richard v. Allstate Ins. Co., 897 F. Supp. 477, 450 (S.D. Cal. 1995) (same). Consistent with the foregoing, awards for emotional-distress damages in employment actions frequently exceed the $75,000 amount in controversy. See e.g., Lemke v. BCI Coca-Cola of Los Angeles, 2004 WL 5825304 (*$135,000* emotional distress damages awarded in wrongful termination action); Anderson v. American Airlines, 2008 WL 4793279 (N.D. Cal.) (*$1 million* emotional distress award in federal wrongful termination action); Grodzik v. California Conservation Corps., 2010 WL 3898722 (*$159,152* emotional distress award to plaintiff on retaliation claims). In Kroske, 432 F. 3d at 980, the Ninth Circuit held that the district court properly estimated *$25,000* for emotional distress damages for purposes of satisfying the amount-in-controversy requirement where the plaintiff's wage loss was only $55,000. Accordingly, as in Kroske, NFS conservatively estimates that the minimum value of Plaintiff's emotional distress claim is at least **$25,000.00** for purposes of calculating the amount in controversy in this action.

30. **Punitive Damages.** Plaintiff also prays for punitive or exemplary damages. See Exhibit A (Complaint) at ¶ 82 & Prayer for Relief. The Ninth Circuit has held that punitive damages should be considered by a district court in determining the amount in controversy where they are recoverable as a matter of law. See Gibson, 261 F. 3d at 945. In State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 403, 425 (2003), the United States Supreme Court said that the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while "not binding," is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process." Here, as shown above at paragraph 18, Plaintiff is seeking compensatory general damages of at least $72,166.80 relating to his wrongful termination. Utilizing a ratio of 2:1

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

that State Farm found to be "instructive" (but without conceding its ultimate propriety for use in this case), and basing any potential exemplary damages award solely on the wrongful-discharge damages at issue in this action, the potential punitive damages award in this action is approximately **$144,333.60**, even though NFS denies that Plaintiff has properly alleged or can ultimately establish the necessary conditions for obtaining exemplary damages.

31. **Attorneys' Fees.** Plaintiff also seeks an award of attorneys' fees. See Exhibit A (Complaint) at ¶¶ 39, 58, 67, 84 & Prayer for Relief. Although NFS disputes that Plaintiff is entitled to any attorneys' fees in this action, where attorneys' fees are authorized by statute and expressly pleaded in the Complaint, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. See Kroske, 432 F. 3d at 980; Galt, 142 F. 3d at 1155-56 (holding that claims for statutory attorneys' fees are to be considered in determining whether the requisite amount is met for diversity jurisdiction regardless of whether the award is discretionary or mandatory). Furthermore, the value placed on such fees is based on what would "necessarily accrue until the action is resolved." See Simmons, 209 F. Supp. 2d at 1034 (observing that the Ninth Circuit anticipated that district courts would consider post-removal attorneys' fees when determining the amount in controversy).

32. The Court's own knowledge and experience in ruling on prevailing plaintiffs' motions for attorneys' fees in both wage-and-hour and wrongful termination claims should indicate that it is "more likely than not" that Plaintiff will be seeking attorneys' fees award of approximately **$150,000** if this case is litigated to judgment in a jury trial. See, e.g., Liu, et al. v. Wong, et al, 2012 WL 5962019 (Los Angeles Sup. Ct. July 5, 2010) (awarding attorneys' fees of *$177,816.25* for wage-and-hour case alleging failure to pay overtime of two plaintiffs); Martin v. The "Old" Turner Inn, 2003 WL 22416020 (Los Angeles Sup. Ct. February 27, 2003) (awarding *$147,610* in attorneys' fees and costs in a single-plaintiff wage-

404051.2 / 4554-003

12

and-hour case in which the plaintiff recovered $49,508 in compensatory and punitive damages); Crawford v. DirecTV Inc., 2010 WL 5383296 (Los Angeles Super. Ct. September 29, 2010) (awarding *$160,000* in attorneys' fees in wrongful termination action where the plaintiff's recovered damages were only $175,000).

33.   Plaintiff's Complaint unequivocally establishes that the amount in controversy as to Plaintiff's claims for special, general, and compensatory damages, including lost wages and benefits, emotional distress damages, penalties, punitive damages and attorneys' fees is well in excess of $75,000.00, exclusive of interest and costs.[4]  Specifically, the amount in controversy, as outlined above, is as follows:

| Monetary Recovery Sought | Amount |
|---|---|
| Wrongful Termination | $72,166.80 |
| Overtime Claim | $39,600.00 |
| Meal Period Claim | $3,432.00 |
| Rest Period Claim | $3,432.00 |
| Untimely Final Wages | $4,620.00 |
| California Labor Code Section 1102.5(f) | $10,000.00 |
| Emotional Distress Damages | $25,000.00 |
| Punitive Damages | $144,333.60 |
| Statutory Attorneys' Fees | $150,000.00 |
| Total[5] | $452,584.40 |

---

[4] Plaintiff also alleges that NFS failed to reimburse him for employment-related expenses, including lodging, meals, and tool purchases.  See Exhibit A (Complaint) at ¶¶ 13, 16, 63-66.  However, because the Complaint provides no information regarding the amount of reimbursement that Plaintiff seeks to recover, and because the aggregated amount in controversy on Plaintiff's other claims far exceeds $75,000.00, NFS will not attempt to determine the amount in controversy regarding this claim.

[5] This amount excludes Plaintiff's reimbursement claim and second cause of action for inaccurate wage statements.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680

34.    Pursuant to 28 U.S.C. Section 1332, the Federal District Courts shall have original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

35.    Pursuant to 28 U.S.C. Sections 1332 and 1441(a), this State Court Action may be removed to Federal District Court, in that the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and there was at the time this action was filed, and there is now, diversity of citizenship between Plaintiff and NFS.

## VENUE

36.    This is a civil action originally filed in a California state court. NFS is informed and believes that the events allegedly giving rise to this action occurred within this judicial district. Accordingly, as the State Court Action was filed in Los Angeles County, California, NFS is entitled, pursuant to 28 U.S.C. Section 1441(a), to remove this action to the United States District Court for the Central District of California.

37.    Nothing in this Notice of Removal is intended or should be construed as any type of express or implied admission by NFS of any fact, of the validity or merits of any of Plaintiff's claims, causes of action, and allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of NFS' rights, claims, remedies, and defenses in connection with this action, all of which are hereby fully and expressly reserved. Further, NFS expressly reserves its right to amend or supplement this Notice and the evidence in support thereof to the fullest extent permitted by applicable law.

///

///

///

WHEREFORE, Defendant National Filter Service, Inc. requests that this action be brought to this Court, and that this Court exercise its jurisdiction in the premises.

DATED: October 21, 2016

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER

By: _____
EMILY G. CAMASTRA
Attorneys for Defendant National Filter Service, Inc.

404051.2 / 4554-003

15

NOTICE OF REMOVAL

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 9401 Wilshire Blvd., Suite 828, Beverly Hills, CA 90212.

On October 21, 2016, I served true copies of the following document(s) described as **NOTICE OF REMOVAL** on the interested parties in this action as follows:

Kevin A. Lipeles
Thomas H. Schelly
Lipeles Law Group, APC
880 Apollo Street, Suite 336
El Segundo, CA 90245

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Swerdlow Florence Sanchez Swerdlow & Wimmer's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 21, 2016, at Beverly Hills, California.

Leslyn Sellers

404051.2 / 4554-003

NOTICE OF REMOVAL

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
9401 WILSHIRE BLVD., SUITE 828
BEVERLY HILLS, CALIFORNIA 90212
TEL (310) 288-3980 • FAX (310) 273-8680